# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

RONDA RAE JONES,

    Plaintiff,

vs.

STEVEN NAERT,
Clinton County Sheriff Deputy,

    Defendant.

Case No. -
HON.

_____/

David F. Zuppke (P31240)
DAVID F. ZUPPKE, PLC
Attorney for Plaintiff
25892 Woodward Ave.
Royal Oak, MI 48067
(248) 206-5900
david@zuppkelaw.com
_____/

## COMPLAINT AND JURY DEMAND

*There is no other civil action between these parties arising out of the same transaction or occurrence alleged in this Complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.*

Plaintiff, Ronda Rae Jones, ("JONES"), complains as follows:

## PRELIMINARY STATEMENT

This action is brought by a U.S. citizen domiciled in Clinton County, Michigan, against a Clinton County Sheriff Office Deputy for damages arising out of her December 3, 2019 false arrest, excessive force, handcuffing, illegal transport to jail, imprisonment and subsequent unsuccessful malicious prosecution without probable cause.

## JURISDICTION & VENUE

1. Jurisdiction is founded on 28 U.S.C. §1331 (federal question), and pursuant to the Fourth, Fourteenth and, Fifth Amendments to the United States Constitution, as well as 42 U.S.C § 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (civil rights). Pendant claims are governed by supplemental jurisdiction under 28 U.S.C. §1367.

2. JONES, at all relevant times, was a resident of Clinton County, Michigan.

3. Venue is properly laid in this Court pursuant to 28 USC §1391(b) as the Defendant, Steven Naert, ("NAERT"), resides in Clinton County Michigan and the subject claim arose in Clinton County, Michigan in the Western District of Michigan.

4. NAERT'S acts were undertaken intentionally, willfully, wantonly, maliciously, and with callous and reckless disregard for JONES' rights, health and well-being, entitling her to punitive damages under federal law and exemplary damages under state law.

5. All of the complained of constitutional violations and state law torts occurred in the Western District of Michigan.

6. At all relevant times, NAERT was acting within the course and scope of his employment as a Clinton County Sheriff Deputy under color of state law. He is sued here in his individual capacity.

## FACTS

7. On December 3, 2019, at approximately 4:45 p.m., while JONES was in her home talking to a girlfriend on the telephone, her 16 year old son Case Jones, ("CASE"), came home and informed JONES that he had just crashed her car into a guard rail located at the Gloria Miller Looking Glass Park, approximately .40 miles from JONES' home, while trying to avoid a dog that ran out in front of his car.



8.  CASE didn't have a telephone with him at the time of the crash and walked back to his home, (about an eight minute walk), to ask his mom what to do.

9.  CASE didn't complain of any injuries so JONES instructed him to take her cellphone with him and walk back to the crash, call a tow truck, and wait for the police.

10. At about 4:51 p.m. on the same day, NAERT was dispatched to the crash site.

11. When he arrived, he observed the crashed car and observed that the car was locked and that there was no driver at the scene.

12. NAERT spoke to a police dispatcher and expressed his opinion that the driver of the vehicle was probably drunk when the vehicle crashed.

13. A passerby driver stopped and suggested that a deer may have caused the crash.

14. NAERT expressed his disagreement with that possibility.

15. By having the vehicle's license plate "run", NAERT determined that Plaintiff JONES was the owner of the vehicle.

16. NAERT immediately formed an opinion, without any evidence in support, that JONES had been the driver of the crashed car.

17. He further decided that she had crashed the car while drunk.

18. He decided to drive to JONES' home to speak to her.

3

19. On his way there, he observed CAS walking back to the crash location.

20. NAERT had no reasonable cause to believe that JONES had driven or crashed the vehicle.

21. NAERT parked his police car in JONES' driveway and walked to the front door and knocked.

22. He observed through a window that JONES was on the telephone.

23. He asked to be let into the home and JONES complied.

24. Immediately after NAERT started to enter, JONES asked him if he had seen her son, who she told him, was walking back to the car.

25. NAERT started to acknowledge that he had indeed observed the boy, but stopped himself midsentence and asked her what happened.

26. JONES truthfully and immediately explained that her son said he had crashed the car because a dog ran out in front of him.

27. By that time, NAERT had already determined without evidence or reasonable proof, that JONES had been the driver, not her son.

28. NAERT'S tone of voice changed and he made it crystal clear to JONES that he did not believe her truthful statements.

29. He sarcastically said "Oh", and he followed it up by accusing JONES of having been the driver.

30. JONES truthfully informed that JONES she had been on her phone with a girlfriend for two hours and not driving her car.

31. NAERT informed JONES that all of the airbags in her car had deployed, which caused JONES to become concerned that despite outward appearances, her son may have suffered

4

a head injury.

32. NAERT'S tone of voice then deteriorated, he became accusatory, and he expressed his unfounded and erroneous opinion that JONES was the driver.

33. He threatened JONES that she better not tell her son to lie and claim that he was the driver.

34. He called it a cover up or words to that effect.

35. JONES told NAERT to get "the hell out of her house".

36. In retaliation, he told JONES that her car "is getting impounded".

37. NAERT left, and JONES left seconds later to check on her son.

38. JONES left her home in a peaceful and quiet manner, walking without difficulty.

39. She was not yelling, shouting, screaming, or engaging in any disruptive or "disorderly" conduct.

40. Still "pissed off" from having been "kicked out of her house" NAERT loudly shouted "Do not go walking on the road or you'll be arrested for disorderly conduct!"

41. At no time between NAERT leaving the house and shouting at JONES, had JONES uttered anything or acted disorderly.

42. In fact, JONES was simply walking in an orderly fashion down her own driveway towards the shoulder of the road. There were no sidewalks for her to use to reach her son.

43. Without any probable cause to believe that JONES had committed a crime of any nature, NAERT shouted to her: "You're gonna be arrested if you come in the road!"

44. Next, NAERT unlawfully ordered JONES to "go back into her home".

45. JONES continued walking towards the direction of her son and informed NAERT that she was "going to find out what's going on with my son".

46. After a few more verbal exchanges, NAERT rushed to JONES and physically grabbed her, told her he was arresting her, and he threatened to "throw her to the ground".

47. Other than lawfully opposing NAERT'S unlawful directives, JONES in no manner disturbed the peace of another citizen.

48. There were no citizens around other than NAERT.

49. NAERT repeatedly accused JONES of being drunk.

50. Without any probable cause to believe that JONES had committed a crime, NAERT stomped on JONES' feet and shoved her on to the hood of his police car with both of her hands physically restrained behind her back and he called for backup.

51. JONES resisted NAERT'S unlawful efforts to handcuff her hands behind her back.

52. She did so merely by turning, twisting and pulling away.

53. Before help arrived, NAERT grabbed JONES by the neck and threw her to the ground and pushed her face into the gravel and dirt, knelt on her lower back, and kept her pressed to the ground.

54. JONES informed NAERT that he was hurting her.

55. She pled with NAERT to stop touching her.

56. The assisting senior officer, Dan Spitzley, arrived and JONES peacefully allowed him to walk her to the patrol car where she got in the back seat.

57. Spitzley informed NAERT that he confirmed that JONES *was not* the driver of the crashed car.

58. In separate cars, the officers drove back to the crash site.

59. NAERT was audio recorded admitting to Spitzley that he had indeed seen JONES' son walking back to the crash site before he arrived at JONES' house.

6

60. Despite having confirmed that the boy he observed was CASE, and confirming that JONES had <u>not</u> been the driver, NAERT refused to end the arrest or incarceration of JONES.

61. JONES was informed by Spitzley that she was "under arrest for disorderly person and for resisting and obstructing" because she didn't do what NAERT ordered her to do.

62. Spitzley told JONES that she had been arrested because she wanted to walk into the road gallivanting, yelling and screaming.

63. NAERT walked CASE to the squad car so he could witness his mother handcuffed in the back of a police car.

64. He told the boy in reference to JONES that it's not normal to be intoxicated at 5:30 on a Tuesday; that his mom was going to jail, that she had been acting crazy, and that he suspected that his mom had actually been the driver.

65. The minor truthfully informed the officer that he had been driving, not his mom.

66. For an extended time, the boy pled with the police to let his mom go, and he was told that she wasn't in "control of her faculties".

67. NAERT told CASE that "I think your mom has a problem with alcohol" and CASE began to cry.

68. JONES was taken to the police station and was provided with first aid for the injuries she received when assaulted and battered and thrown to the ground.

69. She was provided with a tiny mattress pad and locked up in jail.

70. JONES was written a ticket charging her with a misdemeanor "Drunk and Disorderly" and "Resisting and Obstruction".

71. Despite charging JONES with a drunk and disorderly charge, no preliminary breath test, breathalyzer or blood draw were utilized to confirm that JONES was drunk.

72. JONES was fingerprinted and her "mug shot" was taken.

73. At her arraignment the next day, JONES was charged with a felony, i.e. "Assaulting, Battering, Resisting, Obstructing, Opposing Person Performing Duty," ("Obstructing"), in violation of MCL §750.81d.

74. Subsequently, at a probable cause conference, the charges were changed after JONES' attorney rejected a plea bargain offer and informed the prosecutor that JONES would not plead guilty to any charge.

75. JONES was forced to hire legal counsel to defend herself in a jury trial where she was quickly acquitted of all criminal charges.

## COUNT I – 42 USC § 1983
## UNREASONABLE SEARCH AND SEIZURE

76. JONES incorporates the foregoing allegations as if fully restated.

77. JONES was arrested and charged with felonious "Resisting"/"Obstructing Police" in violation of criminal statute MCL §750.81d(1) and "Disorderly Person" in violation of MCL §750.167(1)(e).

78. When the charges were reduced, JONES faced the possibility of being sentenced to one year in jail and a $1,000.00 fine.

79. There was no probable cause to believe that JONES had committed a crime.

80. JONES at all times was lawfully resisting an unlawful arrest.

81. NAERT acted outside his authority, but under color of law.

82. JONES never assaulted, battered, wounded, unlawfully resisted, unlawfully obstructed, unlawfully opposed, or endangered anyone.

83. NAERT never issued a "lawful command" for JONES to obey.

84. NAERT'S arrest of JONES was unlawful.

8

85. NAERT had no lawful authority to order JONES to stay in her home.

86. NAERT had no lawful authority to order JONES not to step off her property or onto the road or the shoulder of the road.

87. NAERT had no lawful right or authority to touch JONES for any reason.

88. NAERT lacked probable cause to arrest JONES for any crime.

89. There were no members of the public present for JONES to have disturbed.

90. JONES never endangered the safety of another person or property.

91. No member of the public was disturbed by JONES.

92. JONES had the Constitutional right to the possession and control of her own person, free from all restraint or interference of others.

93. The actions of NAERT in detaining and searching her person without probable cause, were all violations of JONES' Fourth Amendment safeguards against unreasonable seizures, made actionable by 42 USC §1983.

94. Individually and in concert, and acting under color of law but contrary to law without probable cause, NAERT unlawfully, maliciously, recklessly, and indifferently deprived JONES of her rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 USC §1983, including her right to be free from an unreasonable search and seizure of her person and property, as guaranteed by Amendments IV and XIV of the United States Constitution.

95. As detailed above, NAERT intentionally and/or recklessly made material misrepresentations and omissions of material facts to justify an illegal search, seizure, and arrest, where no probable cause existed.

96. As a direct and proximate result of NAERT'S illegal search, seizure, arrest, jailing,

and prosecution of JONES, and of the other tortious acts alleged below, JONES suffered past, present, and future economic and non-economic damages, including but not limited to:

    a.    Physical injuries, pain and suffering;

    b.    Legal expenses;

    c.    Lost income, fringe benefits, and earning capacity;

    d.    Mortification, shock, fright, embarrassment, humiliation, emotional distress, mental anguish, outrage, shame, anxiety, feelings of helplessness, despair, depression, loss of dignity and self-esteem, loss of enjoyment of life, and reputation damage; and

    e.    Loss of liberty; and denial of constitutional rights.

WHEREFORE, Plaintiff seeks a money judgment against NAERT for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law, and 42 USC §1988.

### COUNT II – 42 USC § 1983 – ARREST WITHOUT PROBABLE CAUSE

97.    JONES incorporates the foregoing allegations as if fully restated.

98.    NAERT, acting without probable cause, under color of law but contrary to law, unlawfully, maliciously, recklessly, and indifferently deprived JONES of her rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 USC §1983, including her right to be free from being arrested without probable cause, as guaranteed by Amendments IV and XIV of the United States Constitution.

99.    JONES' arrest was illegal and unjustified because it was not based upon probable cause.

100.    Specifically, JONES was entitled to 1) drink alcohol in her home, 2) leave her home

without interference, 3) walk down her driveway and out on to the road or the shoulder of the road, and 4) walk to the crash site to check on her son and secure her car.

101. NAERT lacked evidence linking JONES to the commission of a crime.

102. NAERT illegally seized, detained, arrested, imprisoned and held JONES in custody overnight in jail, without probable cause, and with knowledge of and/or reckless disregard for such lack of probable cause.

103. NAERT'S unlawful arrest and confinement of JONES was intentional and/or reckless, performed with physical force, against her will, and deprived her of her personal freedom and liberty.

104. As a direct and proximate result of Defendants' wrongful actions and violations of her constitutional rights, JONES has suffered the damages set forth above.

WHEREFORE, Plaintiff seeks a money judgment against NAERT for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law, and statute.

## COUNT III – 42 USC § 1983 – PROSECUTION WITHOUT PROBABLE CAUSE

105. JONES incorporates the foregoing allegations as if fully restated.

106. NAERT, acting under color of law but contrary to law, without probable cause, unlawfully, maliciously, recklessly and indifferently deprived JONES of her Constitution right to be free from criminal prosecution without probable cause, as guaranteed by Amendments IV and XIV of the United States Constitution.

107. NAERT influenced and participated in the institution and continuation of an unlawful criminal prosecution against JONES without probable cause to believe that JONES had

11

committed a crime.

108. JONES suffered deprivation of her freedom and liberty following the arrest, and as a result of suffering bond conditions imposed by the State Court for her release from jail, and as a result of being forced to repeatedly appear in Court.

109. As a direct and proximate result of Defendants' wrongful actions and violations of her constitutional rights, JONES has suffered the damages set forth above.

WHEREFORE, Plaintiff seeks a money judgment against NAERT for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law, and statute.

## COUNT IV – PENDENT CLAIM
## FALSE ARREST AND FALSE IMPRISONMENT

110. JONES incorporates the foregoing allegations as if fully restated.

111. As more fully stated above, NAERT unlawfully restrained, arrested and deprived Plaintiff of her liberty and freedom of movement and otherwise falsely imprisoned her in jail overnight and for approximately 21 hours, without probable cause, in violation of the common law of the State of Michigan.

112. NAERT is liable for the preventable harms caused by JONES' false imprisonment because he had reason to know that JONES had been unjustifiably arrested without probable cause and thereby NAERT committed a constitutional violation.

113. As a direct and proximate result of JONES' false imprisonment, she suffered the damages stated above.

WHEREFORE, Plaintiff seeks a money judgment against NAERT for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and

if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees as allowed by law and statute.

## COUNT V – PENDENT CLAIM
## MALICIOUS PROSECUTION

114. JONES incorporates the foregoing allegations as if fully restated.

115. As more fully stated above, NAERT knowingly and/or recklessly influenced and participated in the institution and continuation of the criminal prosecution against JONES without probable cause.

116. NAERT acted with malice and deliberate disregard for JONES' legal rights, and with an improper purpose other than securing a proper adjudication of their false and unlawful claims against her.

117. During the course of the criminal trial, NAERT offered false and perjured testimony in an effort to obtain a guilty verdict.

118. Upon information and belief, NAERT participated in JONES' unlawful prosecution and retaliated against her in order to punish her for talking back to him, resisting an unlawful arrest and detention, and for challenging his authority.

119. Since the criminal proceeding against JONES ended in an acquittal due to lack of evidence and probable cause, Defendant's wrongful actions constitute malicious prosecution in violation of MCL §600.2907 and the common law of the State of Michigan.

120. As a direct and proximate result of JONES' false imprisonment, she suffered the damages stated above.

WHEREFORE, Plaintiff seeks a money judgment against NAERT for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post

13

judgment interest, and actual attorney fees as allowed by law, and 42 USC §1988.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

121. JONES incorporates the foregoing allegations as if fully restated.

122. NAERT'S outrageous and reckless acts and omissions were willful and wanton, and were intended to, and in fact did, inflict severe and pervasive emotional distress upon JONES.

123. The physical and verbal mistreatment of JONES by the Defendant constitutes intentional infliction of emotional distress under Michigan law.

124. NAERT'S actions, while clothed in police garb and openly carrying handcuffs and deadly weapons, were extreme and outrageous, reckless, unnecessary and excessive, willful and wanton, all of which was designed to produce, and did produce, severe and pervasive emotional distress.

125. NAERT had the duty of care to not intentionally or recklessly inflict emotional distress upon JONES.

126. NAERT directly and vicariously, intentionally or recklessly, breached that duty.

127. As a direct and proximate result of the intentional infliction of emotional distress upon Plaintiff, she sustained severe emotional distress, along with the other damages set forth above.

WHEREFORE, JONES seeks a money judgment against NAERT for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees.

## COUNT VII – ASSAULT AND BATTERY

128. JONES incorporates the foregoing allegations as if fully restated.

129. As more fully stated above, without justification, consent or probable cause to believe that JONES had committed a crime, NAERT intentionally confronted, accosted, threw JONES to the ground, pressed her body and face into the ground, grabbed and handcuffed JONES against her will and without her consent.

130. NAERT'S wrongful actions constitute illegal assault and battery, in violation of the common law of the State of Michigan.

131. As a direct and proximate result of Defendants' assault and battery against her, JONES has suffered the damages set forth above.

WHEREFORE, JONES seeks a money judgment against NAERT for compensatory damages in excess of $75,000.00; exemplary damages in an amount in excess of $75,000.00, and if available, punitive damages in an amount in excess of $75,000.00, plus costs, pre and post judgment interest, and actual attorney fees.

**PLAINTIFF'S DEMAND FOR JURY TRIAL**

Plaintiff, by and through her attorney, DAVID F. ZUPPKE, P.L.C., hereby demands a trial by jury.

Respectfully submitted,

BY: */s/David F. Zuppke*
DAVID F. ZUPPKE (P31240)
Attorney for Plaintiff
25892 Woodward Avenue
Royal Oak, MI 48067
(248) 206-5900
(248) 542-6301 (fax)
david@zuppkelaw.com

Dated: May 5, 2021