UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONDA RAE JONES,

      Plaintiff,

                                        Case No. 1:21-cv-371

v.

                                        Hon. Hala Y. Jarbou

STEVEN NAERT,

      Defendant.

_____/

## OPINION

Plaintiff Ronda Rae Jones brings this civil rights action asserting claims under 42 U.S.C. § 1983. Plaintiff alleges that Defendant Steven Naert violated her Fourth Amendment right to be free from unreasonable search and seizure, arrest without probable cause, and malicious prosecution. Plaintiff further alleges state law violations of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, assault, and battery. Before the court is Plaintiff's motion for partial summary judgment (ECF No. 20) as to the claim of arrest without probable cause. Also before the court is Defendant's motion for summary judgment (ECF No. 22) on all claims.

### I. FACTUAL BACKGROUND

On December 3, 2019, Plaintiff's sixteen-year-old son, Case Jones, was in the garage decorating Christmas wreaths as part of a fundraiser for his Boy Scout troop. (Case Jones Dep. 40-41, ECF No. 22-3.) At approximately 4:00 p.m., Case took Plaintiff's car to go deliver the wreaths. (*Id.* at 42.) Approximately one half-mile away from Plaintiff's home, Case swerved to avoid hitting a dog and crashed the car into the guardrail of a bridge located near Looking Glass Valley Park on Wacousta Road. (*Id.* at 55, 60.) At the time, Case did not have a cell phone to use

to call for help.  (*Id.* at 82.)  Case got out of the car and began walking along the road to his home.  (*Id.* at 71.)  Once he reached his home, Plaintiff gave him her cell phone, and he left to walk back to the car.  (*Id.* at 82.)

Defendant is a road patrol officer with the Clinton County Sheriff's Office.  (Naert Dep. 19, ECF No. 20-1.)[1]  Defendant was dispatched to the scene of the accident at 4:51 p.m. (Police Rep., ECF No. 28-5, PageID.630.)  When Defendant arrived on the scene, the fire department was present, the vehicle was locked, the airbags were deployed, and no driver was present.  (Naert Dash Camera 10:00-10:55, ECF No. 20.)  Defendant also noted that the hood was cold.  (*Id.* at 15:24-15:38.)  Defendant conducted a LEIN check of the vehicle's registration and learned that Plaintiff was the registered owner.  (Police Rep., PageID.635.)  Dispatch further informed Defendant that Plaintiff had a previous arrest involving drinking and driving.  (Naert Dash Camera 13:06-13:20.)  Sergeant Spitzley offered to come to the scene and watch the car so Defendant could go to Plaintiff's house and inquire.  (*Id.* at 18:22-18:28.)

As Defendant drove the half-mile to Plaintiff's home, Case can be seen walking along the side of the main road back towards the scene of the accident.  (*Id.* at 21:20-21:25.)  Defendant acknowledged seeing Case but "did not correlate that he was the driver of the vehicle involved in the crash and rather [] was simply attempting to contact the registered owner."  (Police Rep., PageID.637.)  After passing Case, Defendant then turned into Plaintiff's neighborhood and proceeded to her home.  (Naert Dash Camera 21:27-22:16.)  Defendant saw Plaintiff seated at her dining room table speaking on a landline telephone.  (Police Rep., PageID.635.)  Defendant asked Plaintiff if she was the owner of a black 2016 Subaru Outback, and she said yes.  (*Id.*)  Plaintiff then allowed Defendant into her home, and they had the following exchange:

---

[1] Excerpts of Defendant's deposition can also be found at ECF Nos. 22-7 and 28-8.

Plaintiff:  Did you get my son?

Defendant:  Your son?

Plaintiff:  He's going back down to the car right now.

Defendant:  Was that your . . . what happened?

Plaintiff:  Apparently, he said he hit a bridge when a dog ran in front of him.

Defendant:  Oh.  He was driving?

. . .

Defendant:  What did he tell you happened?

Plaintiff: Why don't you tell me what he told you?

Defendant:  I haven't talked to anybody.  I got sent because somebody saw a car on the side of the road that hit a bridge [inaudible] and all the airbags were deployed.

(Naert Dash Camera 23:20-23:43.)

Plaintiff proceeded to inform Defendant that she had been on the phone with her girlfriend for about two and a half hours. (*Id.* at 24:05-24:16.)  Plaintiff's landline telephone bill reflects that she was on the phone for 128 minutes on December 20, 2019, beginning at 2:57 p.m.  (Plaintiff's Phone Bill, ECF No. 20-3.)

Plaintiff then raised her voice and told Defendant to go "get [her] goddamn kid." (Naert Dash Camera 24:20-24:25.)  Defendant responded "Relax, okay?  Relax, alright?  This isn't that big of a deal, you're turning this into a big kerfuffle."  (*Id.* at 24:26-24:32.)  Plaintiff asked Defendant for his name and badge number, and Defendant provided his information twice and spelled his last name.  (*Id.* at 24:54, 25:40.)

Defendant expressed his belief that Plaintiff was driving the car at the time of the accident:

I'm guessing that you were drunk and driving your car because you're heavily intoxicated . . . and if you have your son say that he was driving, there's going to be an issue.

3

(*Id.* at 25:00-25:10.)  Plaintiff responded in a raised voice that Defendant was wrong and reiterated that her son was the driver.  (*Id.* at 25:03, 25:11-25:16.)  Defendant noted in his police report that

> immediately upon contacting Ms. Jones at her front door it was readily apparent she was quite intoxicated.  Ms. Jones had a very strong odor of intoxicants emanating from her person and breath, slightly slurred speech, and had bloodshot watery eyes.

(Police Rep., PageID.635.)[2]  Sergeant Spitzley radioed Defendant while he was in the home to inform him that he had made contact with Case who indicated that he was the driver who crashed the car.  (Police Rep., PageID.636.)

The exchange inside Plaintiff's home concluded with Plaintiff telling Defendant to "get the hell out of [her] house" and Defendant responding, "Duly noted.  Your car's getting impounded. It'll be at American Towing.  Have a good evening."  (Naert Dash Camera 26:25-26:34.) Defendant exited the home, got into his patrol car, and began to back out of the driveway.  (*Id.* at 26:35-27:13.)  Plaintiff exited her home shortly thereafter and began walking down her driveway. (*Id.* at 27:14-27:18.)  Defendant repeatedly warned Plaintiff not to walk into the road while drunk or else Plaintiff would be placed under arrest for disorderly conduct.  (*Id.* at 27:22-28:07.)  In response, Plaintiff questioned what charge she would be arrested for and indicated that she was going to find out what was going on with her son.  (*Id.*)  Plaintiff continued walking past Defendant in the direction of her son.

Defendant then placed Plaintiff under arrest.  Defendant initially had control of only one of Plaintiff's arms because she would not put her other arm behind her back for handcuffing.  (*Id.* at 28:12.)  Defendant warned, "I am going to throw you to the ground if you want this to go that way . . . ."  (*Id.* at 28:21-28:24.)  Still holding onto one arm, Defendant moved Plaintiff towards

---

[2] In her deposition, Plaintiff admitted that she began drinking at about noon and had consumed a little over half of a magnum bottle of red wine by 4:45 p.m. that day. (Pl. Dep. 81-82, ECF No. 22-2.)  Plaintiff testified that this amounted to approximately seven glasses of wine during the time period.  (*Id.*)

the front of his patrol car.  (*Id.* at 28:37-28:41.)  Plaintiff continued pulling her second hand away from Defendant to avoid handcuffing and exclaimed that she wanted to go see her son.  (*Id.* at 28:38-28:55.)  In response, Defendant repeatedly asked Plaintiff to put her other hand behind her back.  (*Id.* at 20:09-29:48.)  Defendant also stated twice that he "did not want to fight" Plaintiff.  (*Id.* at 29:28, 29:44.)

Defendant then "performed a modified straight arm bar takedown on [Plaintiff], bringing her to the ground in a facedown prone position where [he] was eventually able to gain control of both of her hands and secure them in handcuffs behind her back."  (Police Rep., PageID.636; *see also* Naert Dash Camera 29:52-30:34.)  Defendant asked Plaintiff multiple times if she would get up and voluntarily walk to his squad car.  (Naert Dash Camera 31:06-32:55.)  Plaintiff responded that if Defendant continued to physically hurt her, then she would continue resisting arrest.  (*Id.*)  When Defendant attempted to roll Plaintiff on her side, she said, "Don't fucking touch me."  (*Id.* at 33:10-33:18.)

Sergeant Spitzley then arrived on the scene to assist Defendant.  (*Id.* at 33:44.)  Together, Sergeant Spitzley and Defendant brought Plaintiff to her feet.  Plaintiff told Sergeant Spitzley, "If you want evil, I'll do evil.  Get him the hell away from me."  (*Id.* at 34:27-34:31.)  She also reiterated that she was concerned about her son.  (*Id.* at 34:36-34:39.)  Plaintiff eventually walked to Defendant's patrol car and sat inside.  Plaintiff was transported to the scene of the accident and then taken to the Clinton County Jail.  (Police Rep., PageID.636.)

Plaintiff was charged with disorderly person under Mich. Comp. Laws § 750.1671(1)(e) and resisting and obstructing a police officer under Mich. Comp. Laws § 750.81d.  (*See* Michigan Reg. of Actions, ECF No. 22-10, PageID.535.)  The felony resisting and obstructing charge was

reduced to a misdemeanor attempt charge.  Plaintiff was ultimately acquitted on both charges in state court.  (Crim. Trial Tr. 242, ECF No. 28-11.)[3]

## II. STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Summary judgment is not an opportunity for the Court to resolve factual disputes.  *Id.* at 249.  The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor."  *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).  "This standard of review remains the same for reviewing cross-motions for summary judgment."  *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441 (6th Cir. 2021).  "[A] case involving cross-motions for summary judgment requires 'evaluat[ing] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'"  *Id.* at 442 (quoting *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019)).

### B. Qualified Immunity

"Qualified immunity is an affirmative defense that protects government officials from liability 'when a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights.'"  *Webb v. United States*, 789 F.3d 647, 659

---

[3] Excerpts of Plaintiff's state criminal trial can also be found at ECF Nos. 22-9 and 28-10.

(6th Cir. 2015) (quoting *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007)).  Officers are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent."  *Id.*  This legal principle must "clearly prohibit the officer's conduct in the particular circumstances before him."  *Id.* at 590.  Accordingly, "[t]he relevant, dispositive inquiry" under the clearly established prong is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  "'This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Wesby*, 138 S. Ct. at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"[C]ourts have discretion to decide which of the two prongs of the qualified-immunity analysis to tackle first."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  The plaintiff bears the burden of showing that the officer is not entitled to qualified immunity.  *See LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016).

## III. ANALYSIS

### A. False Arrest

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Plaintiff brings claims of unreasonable search and seizure (Count I) as well as arrest without

probable cause (Count II) in violation of her Fourth Amendment rights.  (Compl., ECF No. 1.)
The Court analyzes Counts I and II as a claim of false arrest.[4]

### 1. Constitutional Violation

#### (a) Collateral Estoppel

"'A false arrest claim under federal law requires a plaintiff to prove that the arresting officer
lacked probable cause to arrest the plaintiff.'"  *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir.
2020) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).  In the criminal
trial before Judge Michael E. Clarizio in the 65th District Court for Clinton County, Plaintiff
moved for a directed verdict of acquittal on the disorderly person charge, arguing that Defendant
lacked sufficient probable cause to arrest her.  (Crim. Trial Tr. 155.)  Judge Clarizio denied
Plaintiff's motion and found that there had been a "bare minimum showing" of probable cause
creating an issue of fact for the jury.  (*Id.* at 165-66.)  Based on this denial of Plaintiff's directed
verdict, Defendant argues Plaintiff is collaterally estopped from relitigating the issue of probable
cause.

> Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738,
>
> federal courts are required to give preclusive effect to state-court judgments
> whenever the courts of the State from which the judgments emerged would do so.
> The preclusive effect of a state court judgment is determined by state law.

*Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019) (internal citations and quotations omitted).
"Under Michigan law, issue preclusion applies when 1) there is identity of parties across the
proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was
actually litigated and necessarily determined in the first proceeding, and 4) the party against whom

---

[4] Plaintiff likewise acknowledges that her unreasonable search and seizure claim in Count I "involves the same legal
standards" as her arrest without probable cause claim in Count II and analyzes them together.  (Pl.'s Resp. in Opp'n
to Def.'s Mot. for Summ. J., ECF No. 28, PageID.604.)

the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990)).  "Michigan law [also] allows 'crossover estoppel,' which precludes the relitigation of an issue from a criminal proceeding in a subsequent civil proceeding, and vice versa." *Peterson*, 931 F.3d at 554 (quoting *Barrow v. Pritchard*, 597 N.W.2d 853, 855-56 (Mich. Ct. App. 1999)).

The Sixth Circuit has held that "'where a state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action.'"  *Buttino v. City of Hamtramck*, 87 F. App'x 499, 503 (6th Cir. 2004) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 174-75 (6th Cir. 1987)).  And the Michigan Court of Appeals has found that "[a] directed verdict is a judgment on the merits of an issue actually litigated and is thus entitled to collateral estoppel effect.  Thus, [a] directed verdict in favor of defendant constitutes a judgment on the merits."  *Redburn v. Farmers Ins. Exch.*, No. 345216, 2020 WL 90986, at *2 (Mich. Ct. App. Jan. 7, 2020) (citing *Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. 1986)).  However, "neither any Michigan courts nor any federal courts within this Circuit have squarely held that a trial court's denial of a directed verdict in a criminal case collaterally estops a civil plaintiff from contending that her arrest lacked the requisite probable cause."  *Padlo v. VG's Food Ctr., Inc.*, No. 04-cv-74986, 2005 WL 1774081, at *5 (E.D. Mich. July 26, 2005).  Rather, recent Sixth Circuit precedent suggests the contrary.  In *Smith v. Walters*, 849 F. App'x 551 (6th Cir. 2021), the district court found that the plaintiff was collaterally estopped from relitigating whether there was probable cause to support the charge against her based on her unsuccessful motion for a directed verdict in state court.  *Id.* at 555-56.  The Sixth

Circuit affirmed the district court on its independent probable cause determination, but not on the issue of collateral estoppel. *Id.* at 556. In doing so, the Sixth Circuit reasoned that because the plaintiff "was ultimately acquitted, she could not appeal the trial judge's probable cause determination and was therefore not afforded the opportunity to fully litigate the probable cause issue." *Id.* (citing *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 847 (Mich. 2004)). Here, in denying Plaintiff's motion for a directed verdict, Judge Clarizio determined that, when viewing the evidence in a light most favorable to the prosecution, a reasonable jury could find that there was probable cause to support a disorderly person charge. Because Plaintiff was ultimately acquitted, she could not appeal Judge Clarizio's determination. The Court declines to give Judge Clarizio's finding collateral estoppel effect on the issue of probable cause.

### (b) Probable Cause

"An officer has probable cause to arrest a suspect when the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "An objective, not a subjective, standard applies. The question is whether the observable circumstances justify an arrest; the officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). "Through it all, this fluid concept looks for a probability that the suspect violated a criminal statute, keeping in mind that probable cause does not establish a high bar." *Id.* (internal citations and quotations omitted).

<u>Disorderly Person</u>

Under Mich. Comp. Laws § 750.167(1)(e), "a person who is intoxicated in a public place and who is either endangering directly the safety of another person or of property or is acting in a manner that causes a public disturbance" is disorderly.  *Id.*  The Michigan Court of Appeals has construed "the public disturbance provision of the disorderly person statute to require a finding that an accused, while intoxicated, directly endangered the safety of another person or of property as requisite to a finding of guilty of causing a public disturbance while intoxicated."  *People v. Gagnon*, 341 N.W.2d 867, 870 (Mich. Ct. App. 1983); *see also Bauman v. Millisor*, No. 21-1527, 2022 WL 35470, at *4 (6th Cir. Jan. 4, 2022) (citing *Gagnon*).

Plaintiff was intoxicated in a public place.  Riverside Drive is a public place, and there is sufficient evidence to suggest Plaintiff was intoxicated.  "Under Michigan law a person is intoxicated 'when, as a result of drinking alcoholic liquor, his or her mental senses are impaired.'" *Sauer v. Kaz Enter., Inc.*, No. 1:11-cv-1078, 2013 WL 5274372, at *2 (W.D. Mich. Sept. 18, 2013) (quoting Mich. Civ. J. 75.02).  "'A person is visibly intoxicated when the person's intoxication would be apparent to an ordinary observer.'"  *Id.* (quoting *Miller v. Ochampaugh*, 477 N.W.2d 105, 109 (Mich. Ct. App. 1991)).  Defendant reported that she smelled of alcohol, had bloodshot watery eyes, raised her voice, and appeared agitated.  (Police Rep., PageID.635.)  Moreover, Plaintiff conceded, for purposes of her motion for partial summary judgment, that she was intoxicated within the meaning of the statute.  (*See* Pl.'s Br. in Supp. of Mot. for Partial Summ. J., ECF No. 20, PageID.108.)

Plaintiff disputes whether her conduct gave Defendant probable cause to believe that she was a direct danger to the safety of another person or of property.  In *People v. Sparks*, No. 337148, 2018 WL 3074056 (Mich. Ct. App. June 21, 2018), a passerby noticed the defendant wandering

around on the road.  *Id.* at *1.  A police officer driving in the area later observed the defendant
"intoxicated and lying in the grassy shoulder of the roadway with his feet close to the road."  *Id.*
A hill obscured the defendant's position, and the officer believed that he could have been hit by a
car coming over the hill.  *Id.*  When the officer confronted the defendant, he became agitated,
jumped up, and began to walk away.  *Id.*  A jury convicted the defendant of public intoxication
and drunk and disorderly conduct under Mich. Comp. Laws § 750.167(1)(e), the trial court
sentenced him, and the Michigan Court of Appeals affirmed his sentence.  *Id.*

Defendant had probable cause to believe Plaintiff endangered herself and others.  After the
initial conversation, Plaintiff left her home, walked down her driveway, and began walking
alongside Riverside Drive.  She told him that she is "going to go find out what's going on with
[her] son." (Naert Dash Camera 28:04-28:07.)  Defendant reasonably believed that Plaintiff
endangered herself and other drivers.  First, to get to the scene of the accident, Plaintiff would have
continued walking along the shoulder of Riverside Drive and then proceeded along the shoulder
of Wacousta Drive.  Neither have pedestrian sidewalks.  Second, at the time of Plaintiff's arrest, it
was dusk or nearly dark, and there are only two streetlights in the half-mile stretch between
Plaintiff's home and the scene of the accident.  (Naert Dash Camera 39:09-40:23.)  Finally, cars
were driving along both Riverside Drive and Wacousta Drive.  When Sergeant Spitzley pulled
onto Riverside Drive to assist Defendant, he was following a car which eventually allowed him to
pass.  (Spitzley Dash Camera 14:49; Naert Dash Camera, 33:32-34.)  The lights of another car can
be seen on Riverside Drive when Defendant and Sergeant Spitzley were trying to get Plaintiff into
the squad car after the arrest.  (Spitzley Dash Camera 16:27; *see also* Naert Dep. 90.)  Multiple
cars can also be seen on Wacousta Drive—a 45 mile-per-hour two lane road—when Defendant
drove from Plaintiff's home back to the scene of Case's accident after the arrest.  (Naert Dash

Camera 39:55-40:07.)  Based on the facts Defendant had before him at the time of the arrest, Defendant had probable cause to believe Plaintiff's conduct endangered both herself and drivers.

Plaintiff argues that, at the time of her arrest, she had not committed and was not committing any crime.  (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., ECF No. 28, PageID.605.) However, probable cause "exists where the 'facts and circumstances' are 'sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is *about to commit* an offense.'"  *United States v. Stevenson*, 43 F.4th 641, 645 (6th Cir. 2022) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)) (emphasis added).  In *Hartman v. Thompson*, 931 F.3d 471 (6th Cir. 2019), the Sixth Circuit noted that "an officer has probable cause to arrest if he has sufficient knowledge to believe that a crime is about to be committed."  *Id.* at 483 (citing *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007)).  Here, Defendant saw Plaintiff begin walking along Riverside Drive while intoxicated and had sufficient knowledge to believe that Plaintiff would proceed to walk along Wacousta Drive to the scene of the accident.  Cars can be seen on both Riverside Drive and Wacousta Drive, neither have pedestrian sidewalks, and the lighting conditions were poor.  Defendant did not have to wait for Plaintiff to walk in the road or walk in front of a vehicle before concluding that she was committing or was about to commit the offense of disorderly person.

Resisting or Obstructing a Police Officer

The elements of resisting or obstructing a police officer under Mich. Comp. Laws § 750.81d(1) are: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties."  *People v. Corr*, 788 N.W.2d 860, 863 (Mich. Ct.

App. 2010) (citing Mich. Comp. Laws 750.81d(1); Mich. Comp. Laws 750.81d(7)(b)(i); *People v. Ventura*, 686 N.W.2d 748, 750 (Mich. Ct. App. 2004)). "'Obstruct includes the use or threated use of physical interference or force or a knowing failure to comply with a lawful command.'" *Id.* (quoting Mich. Comp. Laws § 750.81d(7)(a)).

Plaintiff's conduct clearly constitutes obstruction and resistance. Defendant warned Plaintiff that if she walked down the road, then she would be arrested for disorderly conduct. Defendant also warned Plaintiff not to proceed to the accident scene or interfere with an ongoing investigation. Plaintiff testified that she did not obey Defendant's directives and, instead, proceeded to walk on the shoulder of Riverside Drive, intending to go to the scene of the accident. (Pl. Dep. 119, 124.) Plaintiff also testified that she was physically resisting Defendant's attempts to place her hands behind her back for handcuffing and later refusing to stand up to get into his vehicle. (*Id.* at 130-36.) And Plaintiff clearly knew Defendant was a police officer because she asked for his name and badge number.

Plaintiff does not dispute this evidence. Rather, Plaintiff argues that Defendant's directives and subsequent arrest of Plaintiff were unlawful because Defendant lacked probable cause. If Defendant's actions were not lawful, Plaintiff had an "absolute right to resist." (Pl.'s Br. in Supp. of Mot. for Partial Summ. J., PageID.111.) "[T]he right to resist *unlawful* arrests, and other *unlawful* invasions of private rights, is well established in [Michigan] common law." *People v. Moreno*, 814 N.W.2d 624, 628 (Mich. 2012). Mich. Comp. Laws § 750.81d does not abrogate this right to resist unlawful police conduct. *Id.* at 629. However, as explained above, Defendant had probable cause to arrest Plaintiff for being a disorderly person under Mich. Comp. Laws § 750.167(1)(e). Accordingly, Defendant's arrest of Plaintiff was lawful, and Plaintiff subsequently resisted and obstructed Defendant in violation of Mich. Comp. Laws § 750.81d(1).

### 2. Clearly Established

Even if Defendant lacked probable cause, Defendant is still entitled to qualified immunity because Plaintiff's rights were not clearly established under the circumstances.  In *Wesby*, the Supreme Court considered whether officers who observed a party in a home had probable cause to believe the attendees were trespassing.  The Supreme Court noted that it has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'"  *Wesby*, 138 S. Ct. at 590 (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).  Moreover,

> the specificity of the rule is especially important in the Fourth Amendment context. Probable cause turn[s] on the assessment of probabilities in particular factual contexts and cannot be reduced to a neat set of legal rules.  It is incapable of precise definition or quantification into percentages.  Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered.  Thus, we have stressed the need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.  While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate.  Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.  But a body of relevant case law is usually necessary to clearly establish the answer with respect to probable cause.

*Id.* (internal citations and quotations omitted).

Plaintiff acknowledges that "there appear to be no published decisions factually similar to the case at bar," but argues that this is a rare and obvious case where the unlawfulness of Defendant's conduct is sufficiently clear.  According to Plaintiff, "'Walking While Intoxicated' *clearly* is not, and never has been, an arrestable offense and Defendant should not have needed some case precedent directly confirming that obvious fact to understand he had no legal basis to seize and arrest Plaintiff."  (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., PageID.610.)  It is true that "the Court has long held that the Fourth Amendment bars officers from making arrests without

probable cause." *Beck v. Hamblen Cnty.*, 969 F.3d 592, 599 (6th Cir. 2020) (citing *Wesby*, 138 S. Ct. at 586). However, as explained in *Wesby* and reiterated by the Sixth Circuit since, "this general rule—that officers must have probable cause—typically will not answer whether an officer had probable cause on a particular occasion." *Id.* And Plaintiff fails to provide a body of relevant caselaw addressing similar facts that would suggest Defendant violated her Fourth Amendment rights when arresting her for disorderly person. Accordingly, Plaintiff's right not to be arrested was not clearly established under the circumstances, and Defendant is entitled to qualified immunity. The Court will grant summary judgment to Defendant on the false arrest claim, Counts I and II of Plaintiff's complaint.

### B. Malicious Prosecution

A claim of malicious prosecution premised on a Fourth Amendment violation requires a showing of the following elements:

> (1) the defendant "made, influenced or participated in the decision to prosecute"; (2) the government lacked probable cause; (3) the proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in the plaintiff's favor.

*Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (quoting *Jones v. Clark Cnty.*, 959 F.3d 748, 756 (6th Cir. 2020); *see also Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). Plaintiff's malicious prosecution claim fails because Defendant did not make, influence or participate in the decision to prosecute Plaintiff.

Plaintiff argues that Defendant made, influenced or participated in the decision to prosecute by providing false information in his police report and omitting exculpatory evidence. "'Providing reports, affidavits, or other investigative materials containing falsehoods, omissions, or misstatements to a prosecutor can constitute participation when (1) those materials formed the basis for the charge,' and '(2) the falsehoods, omissions, or misstatements were made deliberately

16

or with reckless disregard for the truth.'" *Tlapanco v. Elges*, 969 F.3d 638, 655 (6th Cir. 2020) (quoting *Meeks v. City of Detroit*, 727 F. App'x 171, 178 (6th Cir. 2018)).

Plaintiff argues Defendant included multiple falsehoods or misstatements in his police report.  Defendant stated in his police report that Plaintiff was "quite intoxicated" and had a "very strong odor of intoxicants emanating from her person and breath, slightly slurred speech, and had bloodshot watery eyes."  (Police Rep., PageID.635.)  Defendant further stated that he suspected Plaintiff had been the driver of the vehicle during the crash, and that Plaintiff "raised her level of agitation" and "began ranting and raving" during their conversation.  (*Id.*)  Each of these statements are based on Defendant's reasonable observations at the scene.  Bloodshot watery eyes and smelling of alcohol, which Plaintiff does not contest, are indicators of intoxication.  Indeed, Plaintiff herself testified that she drank approximately seven glasses of wine that day.  (Pl. Dep. 81-82.)  The video evidence also depicts Plaintiff raising her voice and using profanities throughout the conversation with Defendant in her home.

Defendant also stated that, after he left the home, Plaintiff began "briskly" walking towards the roadway and "approached the driver's side of door and open window and began pointing her finger in [Defendant's] face, waiving it about while continuing to scream and yell."  (Police Rep., PageID.636.)   Plaintiff argues the video evidence shows this to be a fabrication, but the video evidence only captures Plaintiff walking past Defendant's patrol car.  It does not capture the moments prior where Plaintiff walked down her driveway towards the patrol car.  In sum, Plaintiff fails to demonstrate how these statements are false or fabricated.  Plaintiff likewise has not made a showing that Defendant deliberately or recklessly included them in his report.

Plaintiff further argues that Defendant omitted exculpatory evidence by failing to note that she was not staggering or stumbling and misstated that she was using profanities when walking

down her driveway toward Riverside Drive.  The video evidence shows that Plaintiff used profanities after her arrest, not before, and that she was not staggering or stumbling.  However, Plaintiff fails to demonstrate that the misstatement as to when Plaintiff used profanities and the omission about how she was walking were deliberately or recklessly included in Defendant's police report.  "[A] defendant's participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake."  *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).

Finally, Plaintiff argues that Defendant's issuance of a citation to Plaintiff for being drunk and disorderly "directly caused the commencement of Plaintiff's wrongful prosecution for the misdemeanor offense, without any prosecutorial review or approval."  (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., PageID.611.)  Even if the issuance of a citation qualifies as participation in the decision to prosecute, which Plaintiff cites no caselaw suggesting, Defendant had probable cause to arrest Plaintiff for disorderly person.  Removing the alleged falsehoods and omissions from the probable cause inquiry does not yield a different result.  The record evidence, including the video evidence, demonstrates the existence of probable cause.  *See Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *5 (6th Cir. Nov. 16, 2022) ("A constitutional violation has occurred if the falsehoods were necessary to the finding of probable cause, but not if probable cause could have been independently established." (citing *Sykes v.* Anderson, 625 F.3d 294, 305 (6th Cir. 2010); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989))).  Accordingly, the Court will grant summary judgment to Defendant on the malicious prosecution claim, Count III of Plaintiff's complaint.

### C. State Law Claims

The Court will dismiss Plaintiff's federal claims.  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.

*See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1996))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)).  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims are properly dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court will grant summary judgment to Defendant on the claims of false arrest, Counts I and II of Plaintiff's complaint, and malicious prosecution, Count III of Plaintiff's complaint.  The Court will deny Plaintiff's motion for partial summary judgment.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.  Accordingly,

the Court will dismiss the state law claims without prejudice.


Dated: December 15, 2022                          /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  CHIEF UNITED STATES DISTRICT JUDGE